UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:09-CR-00012-TBR

**UNITED STATES OF AMERICA**                                                          **PLAINTIFF**

**v.**

**JESSE CARNEY, JR.**                                                                     **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendant, Jesse Carney, Jr.'s, Motion to Suppress All Physical and Testimonial Evidence Obtained as a Result of Unlawful Police Actions and Request for a Hearing (Docket # 40). The Government has filed a response (Docket # 41). A hearing was held on September 2, 2009. This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion to Suppress is GRANTED.

**BACKGROUND**

On November 21, 2008, investigators received information from Aaron Williams that an individual had used counterfeit currency to purchase a Nintendo Wii. Williams stated that the vehicle driven by the individual was a white Chevy SUV. On December 2, 2008, Williams' mother contacted investigators and told them that the vehicle had been located parked in front of 4902 Saddlebrook Court and the license plate number was 871-JKC. Williams and his mother were both shown a photo-pack line up which did not include Carney. Both identified Jerry King. At the hearing, there was testimony that no witness saw an individual with a Wii enter this apartment building.

On November 28, 2008, an individual attempted to pass counterfeit currency at a Circle K convenience store. The manager of the store, Amy Forsythe, told United States Secret Service

Special Agent Ken McNaughton that she was made aware that an individual tried to pass a counterfeit bill after the clerk, William Thompson, noticed the bill and called her to the counter. Forsythe told investigators on December 3, 2008, that the individual took, or snatched, the bill from her to conceal the evidence of the counterfeit money and fled the store. Testimony at the hearing revealed that the bill was not retained as evidence, nor was the serial number recorded. Forsythe stated that once the individual left the store he drove away in a white Chevy full-size SUV with license plate number 871-JKC. Forsythe pulled the video surveillance of the transaction and provided it to the investigators. On that same date, both Forsythe and Thompson were shown a photo-pack line up with Carney's photo included but without a photo of King. Forsythe identified Carney but Thompson did not.

According to testimony at the hearing, Special Agent McNaughton reviewed the surveillance video from the Circle K and determined that an individual that fit Carney's description was captured on the video. The video showed Thompson and Forsythe interacting with the individual. The video reflects the individual giving the counterfeit twenty dollar bill to the clerk and then taking it back after he is told it is counterfeit. He pays with another bill, immediately leaves the store and drives away in a white Chevy SUV.

Investigators determined the vehicle was registered to Jenny McQuillen who lived at 4902 Saddlebrook Court #1, Louisville, KY 40216. Special Agent McNaughton conducted surveillance of the vehicle and followed it to the Jefferson County Probation and Parole Office. Special Agent McNaughton then confirmed with the Kentucky Department of Probation and Parole that Jesse Carney was driving the white SUV and had stated his residence as 4902 Saddlebrook Court #1, Louisville, KY 40216. The registration of the apartment was not determined.

On December 8, 2008, Special Agent McNaughton, LMPD Detective Steve Glauber and two other officers drove to 4902 Saddlebrook Court #1 and knocked on the door. Carney answered the door. The officers asked for consent to search the home and the vehicle which was denied. The officers asked Carney questions concerning the transactions which he refused to answer. Carney was placed under arrest on state charges for possession of a forged instrument and tampering with physical evidence. Detective Glauber and Special Agent McNaughton left the scene of the arrest to transport Carney to the Jefferson County Detention Center. Two Secret Service officers were left at the scene to secure the apartment.

While at the scene the officers heard a voice inside the apartment. When asked, Carney stated that there was no one in the apartment and no one had permission to enter the apartment. The officers entered the apartment and arrested the co-defendant, Michael Dewitt. Dewitt was detained on the couch, interviewed, checked for weapons and then released. The officers did not search the apartment at that time.

Detective Glauber wrote the affidavit in order to obtain the search warrant. He used information provided through his own investigation of the Wii situation, as well as information provided to him by Special Agent McNaughton. After the search warrant was obtained it was executed. According to testimony, during the search the officers found a gun in the tank of the toilet in the bathroom, but did not find the counterfeit money. The apartment manager later found the money in the plunger in the bathroom. All of the bills had the same serial number.

On July 21, 2009, Carney moved to exclude this evidence as unlawfully obtained in violation of Fourth Amendment and requested an evidentiary hearing. The United States filed an objection to the motion. A hearing was held on September 2, 2009, where both Special Agent

McNaughton and Detective Glauber testified.

## DISCUSSION

Carney asserts that: the arrest was unlawful; the statements in the affidavit for the search warrant were deliberately false or stated with reckless disregard for the truth; and there is no probable cause nexus linking Carney, the vehicle, and the apartment. As a direct result, Carney moves for all evidence obtained from the search of the apartment and the vehicle be excluded. The Court finds the arrest was lawful, the statements in the affidavit for the search warrant were not deliberately false or given with reckless disregard for the truth, and that there was not a probable cause nexus linking Carney, the vehicle, and the apartment. Additionally, the exclusionary rule does apply to this situation and the evidence obtained as a result of the search of the vehicle and apartment should be excluded.

### I. The Arrest

The Fourth Amendment was established to protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV; *see also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). An arrest is reasonable under the Fourth Amendment if there has been execution of an arrest warrant or there is probable cause that the defendant has committed a crime. *Devenpeck,* 543 U.S. at 152. No warrant is required to arrest a suspected felon in a public place if there is probable cause. *U.S. v. Watson*, 423 U.S. 411, 421-24 (1976). While the arresting officer need not have sufficient evidence in hand to convict the defendant, an arrest without a warrant "must stand on firmer ground that mere suspicion." *Wong Sun v. U.S.*, 371 U.S. 471, 479 (1963) (citing *Henry v. U.S.,* 361 U.S. 98, 101 (1959)) . The Supreme Court in *Wong Sun* explained, "[t]he quantum of information which constitutes probable

cause–evidence which would 'warrant a man of reasonable caution in the belief' that a felony has been committed,–must be measured by the facts of the particular case. *Id.* (citing *Carroll v. United States*, 267 U.S. 132, 162 (1925)). Stated another way, "[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152 (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

Carney moves to exclude all evidence obtained as a result of his arrest on the basis that the arrest was unlawful due to lack of probable cause. Carney argues that the charge of possession of a forged instrument requires the element of knowing possession. Carney states that the government did not have possession of the bill at issue and had no evidence that there had been knowing possession on the part of Carney. Carney reasons that, due to the unlawfulness of the arrest, any subsequent search of the apartment or vehicle is unlawful and the evidence obtained should be excluded. For this proposition, Carney cites *Steagald v. U.S.*, where police had an arrest warrant but went to the home of a third party to make the arrest. 451 U.S. 204 (1981). While at the home of the third-party the officers found incriminating evidence and prosecuted the third-party. *Id.* at 215. The Court in *Steagald* held that a search of a third-party's home pursuant to an arrest warrant is as improper as a warrantless search. *Id.* The Court stated in dicta that officers should obtain search warrants when they obtain arrest warrants; but did not hold that an unlawful arrest precludes a later search pursuant to a valid search warrant. *Id.* at 221-22.

In this case, Detective Glauber and Special Agent McNaughton arrested Carney outside of his apartment in a hallway that had public access. This hallway was a public place negating the requirement of an arrest warrant to effectuate a valid arrest as long as there was probable cause. Special Agent McNaughton testified that the arrest was based on the following evidence: the

5

testimony of Amy Forsythe; the surveillance video; the photo-pack line up from which Forsythe identified Carney; and the testimony of Williams regarding the vehicle. Based on the facts known to the arresting officer at the time of the arrest, the Court finds there was probable cause to arrest Carney.

### II. The Affidavit

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. When probable cause is required, it is an obvious assumption that there will be a truthful showing of probable cause. *Franks v. Delaware*, 438 U.S. 154, 164-65 (1978)(citing *U.S. v. Halsey*, 257 F. Supp. 1002, 1005 (S.D.N.Y. 1966)). The Supreme Court in *Franks* explained,

> this does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

*Id.* at 165. Thus, the standard requires the defendant prove by a preponderance of the evidence, that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Id.* at 155-56. If this is established by the defendant, then the false material must be set aside in determining whether the remaining content is sufficient to establish probable cause. *Id.* at 156. If the remaining material is insufficient to establish probable cause, the search warrant must be voided and the evidence obtained as a result of the search excluded as if probable cause was lacking on the face of the warrant. *Id. See also U.S. v. Campbell*, 878 F.2d 170, 172 (6th Cir. 1989)(citing *Franks* and holding that a deliberate falsehood is required in order to void a search warrant affidavit, as well as stating "an officer cannot rely on a judicial

determination of probable cause if that officer knowingly makes false statements to the judge such that but for these falsities the judge would not have issued the warrant.")

Carney asserts that several statements in the affidavit supporting the search warrant were false so as to void the search warrant. First, Carney declares that the Circle K video and testimony of Forsythe does not provide enough evidence to establish probable cause to search the property at 4902 Saddlebrook Court #1. Carney specifically addresses the conflict between the description in the affidavit that the "defendant took the bill from Ms. Forsythe to conceal the evidence of the counterfeit money and fled the store" and the demeanor of the individual reflected on the surveillance video. Carney insists that this conflict is particularly misleading when followed later by the statement that "Agent Ken McNaughton reviewed the surveillance video from the Circle K....and confirmed that the above defendant, Jesse Carney, appeared in the video passing the counterfeit $20.00 USD bills on the dates in question." The second fault Carney finds with the affidavit concerns this statement, specifically the word "confirmed." Carney maintains that the use of the word "confirmed" is misleading, especially since Special Agent McNaughton testified that the individual in the video fit the general description of Carney but could have been Jerry King. Third, Carney points to the fact that the affidavit does not address the fact that the Circle K clerk, William Thompson, did not identify Carney in the photo-pack as Forsythe had done.

Finally, Carney points to the "Wii Situation" as having no connection to the apartment or Carney and therefore not being a proper basis for probable cause. Carney states that the only connection between the Wii paid for by counterfeit currency and himself is the vehicle: a white, Chevy SUV with 871-JKC plate. Another misstatement also occurred in the affidavit regarding this situation. The affidavit states that "Mr. Williams called on 12-02-08, and reported that he had

7

located the exact vehicle that Jerry King was driving parked in front of 4902 Saddlebrook Ct. that was bearing Kentucky tag #871JKC." Another police report indicated that it had in fact been Williams' mother, Sheila Evans, who had called and reported the information regarding the vehicle. Additionally, the information regarding the vehicle was reported several days after the initial report of the Wii being paid for with counterfeit currency.

The Court finds that Carney has not proved by a preponderance of the evidence that the statements of affiant, Detective Glauber, were knowingly and intentionally made or made in reckless disregard for the truth. As to the first challenge to the affidavit, Special Agent McNaughton testified he did not take note of the demeanor of the individual in the video and the apparent conflict in the description of the individual's demeanor provided by Forsythe. Special Agent McNaughton testified that he watched the video only for the purpose of identification not to determine veracity of Forsythe's statement. This does not appear to be a knowing or intentional falsehood, nor one made with reckless disregard for the truth.

As to the statement by the affiant that Special Agent McNaughton had "confirmed" the identify of Carney and the statements by the affiant regarding details of the vehicle information reported in the Wii situation, neither was proven as a statement made knowingly and intentionally or made in reckless disregard for the truth. As the standard by the Court in *Franks* states, not every fact recited in the warrant affidavit need be absolutely correct. *Id.* at 165. The fact that now Special Agent McNaughton has testified that the individual on the video fit the description of Carney and could have been King does not alter the fact that at the time the affidavit was sworn the affiant had an appropriately accepted belief that this statement was in fact true. Similarly, the misstatement that Williams had reported the vehicle information rather than his mother does not appear to have been

8

knowingly or intentionally false or in reckless disregard for the truth.

Omission of the Cicle K clerk, Thompson's, failure to identify Carney was not established by Carney as a knowing or intentional falsehood nor as a reckless disregard for the truth. While this omission could have been to mislead the magistrate in his finding of probable cause, it may also have been a mere oversight. Carney presented no evidence that it was intended to mislead the magistrate, therefore the Court finds that this omission should not be excluded from the affidavit for the purpose of determining probable cause. Even if the Court had found that this omission was intentional or with reckless disregard, the striking of this statement alone would not render the affidavit so deficient as to require the evidence obtained to be excluded.

The Court finds, based on the above reasoning, that Carney has not proved by a preponderance of the evidence that the statements of affiant, Detective Glauber, were knowingly and intentionally made or made in reckless disregard for the truth. Therefore, the Court finds the statements in the affidavit were not so misleading as to be stricken from the search warrant. The statements will be used to determine whether probable cause was established by the affidavit.

### III. The Probable Cause Nexus

The Fourth Amendment specifically requires that, "no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. The law does not require that every conceivable explanation other than a suspect's illegal conduct be ruled out in order to find probable cause, "[i]nstead, we need only consider whether there are facts that, given the factual and practical considerations of everyday life, could lead a reasonable person to believe that an illegal act has occurred or is about to occur." *U.S. v. Strickland*, 144 F.3d 412, 416 (6th Cir. 1998) (citations omitted). "To demonstrate probable cause to justify the issuance of a search warrant, an affidavit

must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *U.S. v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (quoting *U.S. v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005), *cert. denied*, 127 S.Ct. 446 (2006)).

Reasonable minds may differ as to the determination of probable cause; therefore great deference is accorded to the magistrate's determination. *U.S. v. Leon*, 468 U.S. 897, 914 (1984). This deference is not unbounded. *Id.* First, the decision may be inspected as to the knowing or reckless falsity of the affidavit on which the decision is based. *Id.* Additionally, the magistrate must act as a "neutral and detached" magistrate, but not as a rubber stamp. *Id.* Finally, "courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Id.* at 915 (citing *Illinois v. Gates*, 462 U.S. 213, 239 (1983)). If the magistrate's probable cause determination was based on an improper analysis of the totality of the circumstances, or the warrant was improper in some other respect, a reviewing court may properly conclude the warrant was invalid. *Id.* In this case, Carney asks the court to find the warrant invalid for lack of a probable cause nexus linking Carney, the vehicle, and the apartment searched and to suppress evidence found as a result of that search.

The affidavit presented in support of the search warrant "must contain particularized facts demonstrating 'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *U.S. v. McPhearson*, 469 F.3d 518 (6th Cir. 2006) (quoting *Frazier,* 423 F.3d at 531). The magistrate must have a substantial basis for concluding that a search of the premises would uncover evidence of wrongdoing. *U.S. v. Savoca*, 739 F.2d 220, 224 (6th Cir. 1984). "This requires 'a nexus between the place to be searched and the evidence sought.'" *McPhearson,* 469 F.3d at 518 (quoting *U.S. v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). Mere presence or arrest

10

of a suspect at a residence is too insignificant a connection with that residence to establish the nexus necessary for a finding of probable cause. *Id.*; *U.S. v. Savoca*, 761 F.2d 292, 297 (6th Cir. 1985). The Supreme Court, in *Zurcher v. Standford Daily et al.*, held that "the critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." 436 U.S. 547, 556 (1970).

The Sixth Circuit has ruled in two similar cases that failure of a probable cause nexus has resulted in a bare bones affidavit. In *McPhearson*, investigators went to the home of McPhearson to arrest him on a warrant for simple assault. *McPhearson*, 469 F.3d at 520. The pat-down of McPhearson during the search incident to arrest resulted in a finding of crack cocaine in McPhearson's pocket. *Id.* McPhearson refused to consent to a search of his home and the investigators sought a search warrant based on the finding of crack cocaine on the person of McPhearson. *Id.* at 520-521. The search warrant was issued and fully executed. *Id.* at 521-22. The Court in *McPhearson* held, however, that the search warrant was invalid because the "affidavit failed to establish a nexus between McPhearson's residence and evidence of wrongdoing that would support a finding of probable cause." *Id.* at 526. In *McPhearson*, the mere fact that the defendant possessed illegal drugs did not provide probable cause or establish a nexus that illegal drugs would be found in the home. This failure of a nexus between the residence and the defendant resulted in a bare bones affidavit. *Id.* at 526-527.

Similarly, in *Savoca*, FBI agents followed two suspected bank robbers to a motel room and arrested them after they exited the room. 739 F.2d at 222. The agents then secured a search warrant for the motel room for evidence tied to the bank robberies. *Id.* The warrant affidavit based probable

cause on the fact that two known suspects were in the same location. *Id.* The Court held that the affidavit only established that "two persons known to have been involved in several bank robberies were observed on the same premises" and such information established no more than a "bare suspicion." *Id.* at 225. The mere fact that two persons known to be involved in illegal activity were in the same place did not provide probable cause or establish a nexus that evidence of the bank robberies would be found in the motel room.

In the cases where the Court has found a probable cause link, an additional fact has been known and supplied in the affidavit allowing the magistrate to make an inference of probable cause. For example, in *Berry*, the officers provided information in the underlying affidavit that Berry was known to be involved in drug trafficking, he had been arrested for violating his probation for a drug conviction, and that other officers had discovered drugs in his vehicle. *U.S. v. Berry*, 565 F.3d 332, 339 (6th Cir. 2009). The affidavit provided a sufficient nexus, unlike the affidavit in *McPhearson*, by establishing an additional fact, e.g., that Berry was a known drug dealer, which allowed the magistrate to infer that drugs would be found in the home.

In the case at bar, there is no probable cause nexus established between Carney, the vehicle and the apartment at 4902 Saddlebrook Court #1. While there may have been probable cause to arrest Carney based on the previously discussed evidence regarding the incident at Circle K, the arrest did not provide probable cause to search the apartment. The mere fact that the white SUV with Kentucky plate 871-JKC was parked in front of the apartment building is not a sufficient enough link to establish probable cause to search the apartment. Additionally, the use of counterfeit currency by another individual in purchasing a Wii, nearly two weeks prior to the arrest and search, is not a sufficient enough link to establish probable cause. While the sale of Wii may have linked

12

the vehicle to counterfeit and the vehicle was again used at the Circle K incident, the likelihood of finding evidence of the transaction that took place at the Circle K was slight since over a week had passed since the transaction. The nexus the government has attempted to construct is much too attenuated to establish probable cause.

**IV. The Exclusionary Rule**

The exclusionary rule has been used to suppress evidence obtained in violation of the Fourth Amendment. However, it is clear that the rule was "neither intended nor able to 'cure the invasion of the defendant's rights which he has already suffered.'" *Leon*, 468 U.S. at 906 (citing *Stone v. Powell*, 428 U.S. 465, 540 (1976)). In fact, the rule is a judicially created remedy designed to protect Fourth Amendment rights through its deterrent effect, rather than to establish a constitutional right of the aggrieved party. *Id.* (citing *U.S. v. Calandra*, 414 U.S. 338, 348 (1974). [In order to have standing to invoke the exclusionary rule, the prosecution must seek to use the fruits of an illegal search or seizure against the victim of police misconduct. *Leon*, 468 U.S. at 910.]

The deterrent effect of the exclusionary rule is not applicable to judicial officers and their errors in determining probable cause. *Id.* at 917. The Court in *Stone* elaborated, where the officer's conduct is objectively reasonable, "excluding the evidence will not further the ends of the exclusionary rule in any appreciable way." *Stone*, 428 U.S. at 539-40. In other words, "penalizing the officer for the magistrate's error rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Leon*, 468 U.S. at 921.

This standard requires that the officer be acting in an objectively reasonable manner. There are circumstances where the officer may not be acting in an objectively reasonable manner in relying on the probable cause determination of the magistrate. *Id.* at 922-23. For example, if the magistrate

13

judge was misled by information in the affidavit that the affiant knew was false or was in reckless disregard for the truth. *Id.* at 923. Exclusion may also be proper if the issuing magistrate wholly abandoned his detached neutrality. *Id.*; *see Lo-Ji Slaes, Inc. v. New York*, 442 U.S. 319 (1979). Nor would an officer be acting in an objectively reasonable manner if he were to rely on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975). Finally, exclusion is proper if the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it valid." *Leon*, 468 U.S. at 923.

As determined previously, the Court finds that the magistrate was not misled by information in the affidavit the affiant knew was false or was stated in reckless disregard for the truth. It has not been asserted by Carney that the magistrate in this case acted to wholly abandon his judicial role. Nor has it been asserted by Carney that the warrant was facially deficient in failing to describe the place to be searched or the things to be seized. The only ground on which exclusion may be granted is if the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Brown*, 422 U.S. at 610-11. This has otherwise been described by the court as a "bare bones affidavit." *Savoca*, 739 F.2d at 225; *McPhearson*, 469 F.3d at 526.

In two similar cases, the Sixth Circuit has found that a bare bones affidavit will result in suppression or exclusion of evidence obtained as a result of the search warrant. In *McPhearson*, the Court stated that the good faith belief or objectively reasonable belief standard had not been met when the affidavit did not contain a minimally sufficient nexus between McPhearson and his residence. 469 F.3d at 526. As a result, the evidence gathered as a result of the search warrant was

14

excluded. *Id.* at 526-27. In *McPhearson*, the mere fact that the defendant possessed illegal drugs did not provide probable cause or establish a nexus that illegal drugs would be found in the home resulting in an affidavit lacking in indicia of probable cause.

In *Savoca*, the Court ruled "the affidavit establishes no more than a 'bare suspicion' that incriminating evidence would be found in the motel room, and that the defendant's motion to suppress should have been granted." 739 F.2d at 225 (citations omitted). Here, the mere fact that two persons known to be involved in illegal activity were in the same place did not provide probable cause or establish a nexus that evidence of the bank robberies would be found in the motel room resulting in an affidavit lacking in indicia of probable cause.

In the case at bar, the Court has determined there was no probable cause nexus established between Carney, the vehicle and the apartment searched. This failure to establish a probable case nexus has resulted in a bare bones affidavit with no more than a bare suspicion that evidence of counterfeit bills would be found in either the apartment or the vehicle. There was probable cause to arrest Carney; however, the arrest did not provide probable cause to search the apartment or vehicle without some assertion that evidence of the crime could be found there. The fact that the white SUV was parked in front of the apartment building is not a sufficient enough link to establish probable cause. The use of counterfeit currency by another individual in purchasing a Wii, nearly two weeks prior to the arrest and search, is not a sufficient enough link to establish probable cause. While the sale of Wii may have linked the vehicle to counterfeit and the vehicle was again used at the Circle K incident the passage of over a week since the Circle K transaction greatly reduced the likelihood of finding evidence in the vehicle. As a result, the nexus the government has attempted to create is much too attenuated to establish probable cause. The resulting affidavit could be

15

described as bare bones or lacking in indicia of probable cause. Therefore, the Court finds that the evidence obtained as a result of the search of the vehicle and the apartment must be excluded. Carney's Motion to Suppress is GRANTED.

Only evidence obtained as a result of the search of the vehicle and apartment pursuant to the search warrant shall be excluded. Evidence obtained by other persons, not acting pursuant to the search warrant at issue here, is not excluded under this Order. Therefore, the counterfeit money found in the apartment by the apartment manager on a later date is not excluded under this Order.

## CONCLUSION

For the foregoing reasons IT IS HEREBY ORDERED that the Defendant's Motion to Suppress is GRANTED.